IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ANDREW J. POPE and JOSHUA RAVE,

                Plaintiffs,

  v.

ESPESETH, INC.,
FISH WINDOW CLEANING SERVICES, INC., and
ANTHONY ESPESETH,

                Defendants.

OPINION & ORDER

15-cv-486-jdp

---

    Plaintiffs Andrew J. Pope and Joshua Rave are window cleaners who filed a proposed collective action alleging that their former employers paid them using a commission-based method of employee compensation that failed to pay them minimum wage and overtime pay, in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-19, and Wisconsin wage and hour laws. Dkt. 14. Plaintiffs name as defendants Espeseth, Inc., a franchisee of defendant Fish Window Cleaning Services, Inc., and Anthony Espeseth, the franchisee's owner. Plaintiffs allege that Espeseth, Inc., (the franchisee) and Fish (the franchisor) are joint employers of plaintiffs.

    Fish has moved for summary judgment that it is not plaintiffs' employer under the FLSA or Wisconsin wage and hour laws. Dkt. 53. Plaintiffs have filed three preliminary motions in an attempt to avoid summary judgment against them, which the court will deny. The court will grant Fish's summary judgment motion and dismiss Fish from the case. The court will also grant plaintiffs' motion for conditional certification of a class on its claims against the remaining defendants.

PRELIMINARY MATTERS

Plaintiffs move for leave to amend their complaint so that they may pursue an apparent agency theory of liability against Fish. Dkt. 78. In support of their motion, plaintiffs state that they attempted to plead a claim that Fish was their apparent employer, but failed to include allegations that plaintiffs reasonably relied upon Fish's representation that plaintiffs worked for Fish, an essential element of the apparent agency theory. They now wish to correct their error.

The court need not determine which deadline for amendments controls—the December 22, 2015 deadline last ordered by the court, *see* Dkt. 10, or the May 31, 2016 deadline agreed to by the parties, *see* Dkt. 28, at 4—because both have long since passed. When a party seeks leave to amend its complaint after the court-imposed deadline for amending without the court's leave, this court analyses the motion under Federal Rule of Civil Procedure 15. Plaintiffs do not request the extension of any deadlines in the court's scheduling order, so Rule 16 does not apply.

Under Rule 15, the court should freely give leave to amend when justice so requires. "[L]eave to amend need not be given if there is an apparent reason not to do so, such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" *Payne v. Churchich*, 161 F.3d 1030, 1036 (7th Cir. 1998) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Here, the issue is undue delay. Plaintiffs filed their motion to amend their complaint to include an additional theory of liability based on apparent agency the same day Fish's motion for summary judgment on the issue of joint employer liability was fully briefed,

more than five months after the deadline for amending pleadings agreed to by the parties and more than 10 months after the deadline set by the court's scheduling order.

Plaintiffs contend that they "attempted" to plead the apparent employer theory in their first amended complaint, but failed. The lack of bad faith would not excuse plaintiffs' delay in making the amendment. More important, it does not cure the prejudice that Fish would suffer were the court to allow the amendment. Under Rule 8, a complaint must contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice'" of the claim and its basis. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs' first amended complaint did not give Fish any notice that plaintiffs were pressing an apparent agency theory of liability. To allow them to amend their complaint now, five months after the agreed-upon deadline and when Fish's motion for summary judgment on the issue of its liability as an employer is fully briefed, would prejudice Fish and contradict the purpose of a complaint. Plaintiffs have not explained why they did not make the requested amendment much sooner, when Fish could have addressed the apparent agency theory on summary judgment. The court will deny plaintiffs' motion to amend their complaint.

Plaintiffs also move the court to stay consideration of Fish's motion for summary judgment. Dkt. 90. Rule 56(d) allows the court to deny or defer consideration of a summary judgment motion when the "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Plaintiffs have the burden of showing why they "cannot adequately respond to the summary judgment motion without further discovery." *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 628 (7th Cir. 2014)

(quoting *Deere & Co. v. Ohio Gear*, 462 F.3d 701. 706 (7th Cir. 2006)). The court has "broad discretion to deny" motions under Rule 56(d). *Dewitt v. Corizon, Inc.*, 760 F.3d 654, 660 (7th Cir. 2014).

Plaintiffs have not shown that relief under Rule 56(d) is necessary. Plaintiffs complain that Fish cited the declarations of three other franchisees, Dkt. 72; Dkt. 73; Dkt. 77, in its reply in support of its summary judgment motion, so plaintiffs ask for more time to conduct discovery concerning these franchisees. But the declarations in question are not relevant to the court's analysis of Fish's summary judgment motion, so the court will not delay consideration of that motion to allow the discovery that plaintiffs request.

Finally, plaintiffs move for leave to file a sur-reply in opposition to Fish's motion for summary judgment. Dkt. 89. The court has previously explained to the parties that it "permits sur-replies only in rare, unusual situations." Dkt. 33, at 11. Plaintiffs argue that they deserve the opportunity to address three arguments raised by Fish in its reply. First, plaintiffs wish to respond to Fish's argument based on the supplemental declaration of Angie Masters, Dkt. 86, submitted for the first time with Fish's reply. But the declaration is not relevant to the court's analysis of Fish's summary judgment motion, so a sur-reply to address the declaration is unnecessary. Second, plaintiffs wish to respond to Fish's arguments concerning plaintiffs' apparent agency theory. But because the court will deny plaintiffs' motion to amend their complaint to include this theory, it will not consider either party's arguments concerning this theory. Finally, plaintiffs wish to respond to Fish's argument that Fish is not plaintiffs' employer under the standard advanced in *Kerl v. Dennis Rasmussen, Inc.*, 2004 WI 86, ¶ 43, 273 Wis. 2d 106, 682 N.W.2d 328. Fish's argument, made in response to plaintiffs' assertion that *Kerl* is controlling, does not present the rare, unusual situation calling for a sur-

4

reply. But regardless, as discussed below, the *Kerl* standard does not apply to plaintiffs' claims, so further argument about the application of *Kerl* is unnecessary. The court will deny plaintiffs' motion.

## UNDISPUTED FACTS

The following facts, except where noted, are undisputed.

Anthony Espeseth entered into a franchise agreement with Fish in 2004 to open a window cleaning business under the "Fish Window Cleaning" name. He renewed the agreement in 2014. Sometime after the renewal, Anthony Espeseth may have assigned his interest in the franchise agreement to his corporate entity, Espeseth, Inc. The parties dispute whether the assignment was fully executed, but for the purposes of Fish's summary judgment motion, whether Anthony Espeseth or Espeseth, Inc., was the franchisee does not matter, so, in this order, the court will refer simply to "Espeseth" as the franchisee.

The franchise agreement governing the relationship between Espeseth and Fish states that Espeseth, as a franchisee, is "an independent business . . . solely responsible for control and management . . . including such matters as hiring and discharging [its] employees" and that Fish, as the franchisor, has "no power, responsibility or liability in respect to employee relations issues including hiring, discharge and discipline, and related matters." Dkt. 56-5, at 12 and Dkt. 56-6, at 14. The franchise agreement requires Espeseth to "hire and supervise efficient, competent, and courteous persons . . . require [them] to work in clean uniforms approved by [Fish] . . . hire and supervise a satisfactory number of employees [and] execute non-disclosure and confidentiality agreements with [them]." Dkt. 56-5, at 14 and Dkt. 56-6, at 16. The franchise agreement makes clear that "[n]o employee of [Espeseth] will be deemed

to be an employee of [Fish] for any purpose whatsoever" and that Espeseth must "set and pay [its employees'] wages, commissions and incentives with no liability on" Fish. Dkt. 56-5, at 14 and Dkt. 56-6, at 16.

Fish required Espeseth, as a new franchisee, to review training materials including the "Window Cleaner Pay Overview." Dkt. 49-6. This document instructs franchisees to pay window cleaners an hourly wage during the initial 10-day training period and then pay them a 30 percent commission on all of the glass that they clean, plus a 10 percent bonus if they follow suggested standards. The document also states that franchisees "must follow all state and federal wage and hour laws" and must log window cleaners' hours. *Id.* at 1. Fish does not require franchisees to use this commission-based method of employee compensation but suggests that they may not be successful if they do not "pay on a percentage." Dkt. 49-2, at 12. Espeseth understood that the commission-based compensation method was not required. Dkt. 57 (Espeseth Dep. 92:8-15). Espeseth adopted Fish's recommended compensation method with some modifications.

Fish provided Espeseth with a "Fish Window Cleaning Policy and Procedure Manual" to distribute to Espeseth's employees. *See* Dkt. 52-4. The parties dispute whether Fish required, or merely recommended, that Espeseth provide a copy of the manual to its employees.

In April 2012, Espeseth hired Pope as a window cleaner. About two years later, Espeseth hired Rave as a window cleaner. Throughout their terms as Espeseth employees, plaintiffs received paychecks and tax forms issued by "Espeseth, Inc., d/b/a Fish Window Cleaning." Dkt. 83, at ¶ 98, ¶ 99. Fish did not retain any employment records concerning plaintiffs. Rave resigned from his position in January 2015; Espeseth fired Pope in May 2015.

6

One of Espeseth's managers notified Pope of his termination. Fish was not involved in Espeseth's decisions to hire or fire plaintiffs.

In August 2015, plaintiffs filed suit against Espeseth, Inc., and Wendy Espeseth alleging violations of the FLSA and Wisconsin wage and hour law. Dkt. 1. In December 2015, plaintiffs amended their complaint to include Fish and Anthony Espeseth as defendants and to drop Wendy Espeseth. Dkt. 14. The court has federal question jurisdiction over the FLSA claim under 28 U.S.C. § 1331, and it has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

MOTION FOR SUMMARY JUDGMENT

Fish moves for summary judgment that it is not plaintiffs' employer under the FLSA or Wisconsin law. Summary judgment is appropriate if Fish shows "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on Fish's motion for summary judgment, the court views all facts and draws all inferences in the light most favorable to plaintiffs. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To avoid summary judgment, plaintiffs "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 256.

**A. The FLSA definition of employer**

The FLSA defines an employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Plaintiffs allege that Fish, the franchisor, and Espeseth, the franchisee, are *both* employers of Espeseth's employees.

7

Under the FLSA, a joint employer relationship exists when each alleged employer exercises control over the working conditions of the employees. *Moldenhauer v. Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 644 (7th Cir. 2008). Factors to consider when deciding whether Fish exercised control over plaintiffs' working conditions include whether Fish (1) had the power to hire and fire employees; (2) supervised and controlled employee work schedules or conditions of payment; (3) determined the rate and method of payment; and (4) maintained employment records. *Id.* Other factors may also be relevant to the analysis. *Id.*

Plaintiffs concede that Fish does not have the power to hire and fire Espeseth's employees and does not maintain employment records for Espeseth's employees. But plaintiffs contend that Fish supervises and controls Espeseth's employee work schedules via the manual, which requires employees to report to franchisee management at 7:00 a.m. every day of the training period and on Mondays, Wednesdays, and Fridays thereafter. At the heart of plaintiffs' argument is the idea that Fish controlled Espeseth's employees through Fish's employee manual. Both parties rely on the following testimony from Anthony Espeseth:

> Q. Did Fish require you to have employees sign off on that manual?
>
> A. Yes.
>
> . . . .
>
> Q. So the Policy and Procedure Manual is provided to every newly hired employee?
>
> A. Yes.
>
> Q. And did Fish require you to do that?
>
> A. Yes.
>
> Q. All right.
>
> A. That's more like recommended, but yes.

8

Dkt. 57 (Espeseth Dep. 45:8-46:8). Reading this testimony in the light most favorable to plaintiffs, Espeseth indicates that he believed that Fish required him to provide a copy of the manual to his employees and to have his employees sign off on the manual.

But the critical issue here is that Espeseth did not have to follow the manual as drafted by Fish. Rather, Espeseth was free to adapt the manual and Espeseth was responsible for setting employee policy. Fish adduces the declaration of Angie Masters, Fish's director of franchise support, that when training franchisees, she explains to them that

> all personnel-related documents and recommendations that Fish Window Cleaning provides . . . are optional and should be modified and customized as the franchisee deems appropriate to suit the individual franchisee's window cleaning business; and that franchisees should review all sample documents Fish Window Cleaning provides and make modifications to suit their own business needs.

Dkt. 56, ¶ 20. Espeseth followed this recommendation, using the manual provided by Fish but modifying it as he wished. For example, he sometimes required employees to report to the office *every* workday by 7:30 a.m., rather than every Monday, Wednesday, and Friday, as Fish's manual states. Dkt. 57 (Espeseth Dep. 39:10-40:3). And he crossed off the manual the requirement that employees pay for items of their work uniforms. *Id.* (Espeseth Dep. 46:15-21). Again viewing the evidence in the light most favorable to plaintiffs, Espeseth believed that Fish required him to have his employees sign off on a manual, but Fish did not require that Espeseth enforce the requirements exactly as listed in the manual Fish provided, nor did Espeseth do so in every instance. Plaintiffs have not adduced evidence that Fish controls Espeseth's employee work schedules.

Plaintiffs also contend that Fish "effectively recommends" to its franchisees a commission-based method of employee compensation and therefore controlled plaintiffs'

9

payment conditions. Plaintiffs adduce Fish's "Window Cleaner Pay Overview" document, which it requires all new franchisees to review, and Fish's suggestion that franchisees may not be successful if they do not "pay on a percentage" as evidence of Fish's effective recommendation. Dkt. 49-2, at 12. Plaintiffs also argue that Fish has the right to require franchisees to implement its recommended compensation method. Fish disputes this, but it simply does not matter: regardless of whether Fish *could* require franchisees to adopt a specific method of payment, the parties agree that it has not required Espeseth to do so. Although Espeseth implemented Fish's recommended compensation method, it did so with some modifications. For example, Espeseth sometimes schedules its employees to work on weekends despite Fish's recommendation that franchisees do not schedule weekend work, *see* Dkt. 57 (Espeseth Dep. 71:4-72:1), Espeseth pays its employees a per diem not recommended by Fish, *see id.* (Espeseth Dep. 100:1-101:9), and Espeseth pays its employees a 32 percent commission for "route work" and a 28 percent commission for "residential work," unlike the straight 30 percent commission recommended by Fish, *see id.* (Espeseth Dep. 164:13-15).

The record demonstrates that Fish's commission-based method of employee compensation was only recommended, not required. *Moldenhauer* requires the court to consider the *amount* of control exercised over the employment situation *as a whole*. 536 F.3d at 644. A recommendation regarding the method of employee compensation does not, on its own, amount to control over employees' working conditions. The minimal control exerted by Fish is nothing like the control by the joint employers in the cases cited by plaintiffs, such as *Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625, 2011 WL 10069108 (W.D. Wis. Apr. 11, 2011). Plaintiffs here have not adduced evidence that, if presented to the jury, would allow

the jury to make a reasoned finding that Fish exercised control over plaintiffs' working conditions. The court will grant summary judgment that Fish is not plaintiffs' employer under the FLSA.

## B.  The Wisconsin law definitions of employer

Plaintiffs have also alleged that Fish is their employer under Wisconsin law. To prevail on their state-law minimum wage claim against Fish, plaintiffs must show that Fish has "control or direction of any person employed at any labor or responsible directly or indirectly for the wages of another." Wis. Stat. § 104.01(3)(a). To prevail on their state-law overtime and straight time pay claims against Fish, plaintiffs must show that Fish is "engaged in any activity, enterprise or business employing one or more persons within the state." Wis. Stat. § 109.01(2). These definitions are similar to the definition of employer under the FLSA. *See Montana v. JTK Restorations, LLC*, No. 14-cv-487, 2015 WL 5444945 at *2 (E.D. Wis. Sept. 14, 2015); *see also Mays v. Grand Daddy's, LLC*, No. 14-cv-461, 2015 WL 4373565 (W.D. Wis. July 15, 2015) (dismissing claims under the FLSA and Wisconsin wage law because defendant was not an "employer" as defined by the FLSA). The evidence plaintiffs adduce in support of their contention that Fish is an employer under the FLSA does not support a finding that Fish is an employer under Wisconsin law, either. In fact, plaintiffs do not argue that they have made a showing that Fish is an employer under the plain language of the Wisconsin statutes. Instead, they argue that the court should use the test for respondeat superior liability of a franchisor, *see Kerl v. Dennis Rasmussen, Inc.*, 2004 WI 86, ¶ 43, 273 Wis. 2d 106, 682 N.W.2d 328, or the test for independent contractor status, *see Wittka v. Hartnell*, 46 Wis. 2d 374, 382-83, 175 N.W.2d 248 (1970).

11

But the court will not overlook the statutory language forming the basis of plaintiffs' claims in favor of court-created tests applicable to common law torts or other statutory provisions. Under the plain language of the Wisconsin statutes, which require at least as much of a showing of control as the FLSA, plaintiffs have not shown that Fish is their employer. So the court will grant summary judgment that Fish is not plaintiffs' employer under Wisconsin wage and hour law. Because Fish is not plaintiffs' employer under the FLSA or Wisconsin law, the court will dismiss Fish from the case.

## MOTION FOR CONDITIONAL CERTIFICATION

Because the court will dismiss Fish as a party to this case, it will consider plaintiffs' motion for conditional certification of only the following class:

> All employees employed at a location of Fish Window Cleaning, which was administered by Espeseth Inc. as the franchisee of Fish, during the time period of July 8, 2012 to the present.

Dkt. 47, at 1. Espeseth does not contest the conditional certification of this class, so the court will grant plaintiffs' motion. But the court cannot approve a notice to potential plaintiffs because plaintiffs have not yet filed a proposed notice. The parties must confer on the appropriate language for the notice and submit a proposed notice for the court's approval by January 25, 2017.

## ORDER

IT IS ORDERED that:

1. Plaintiffs Andrew J. Pope and Joshua Rave's motion to amend their complaint, Dkt. 78, is DENIED.

2. Plaintiffs' motion to stay consideration of summary judgment, Dkt. 90, is DENIED.

3. Plaintiffs' motion for leave to file sur-reply, Dkt. 89, is DENIED.

4. Defendant Fish Window Cleaning Services, Inc.'s motion for summary judgment, Dkt. 53, is GRANTED. Fish is dismissed from this case.

5. Plaintiffs' motion for conditional certification, Dkt. 47, is GRANTED in part, consistent with this opinion. The parties must confer on the appropriate language for a notice to potential class members and submit a proposed notice for the court's approval by January 25, 2017.

Entered January 11, 2017.

                                        BY THE COURT:

                                        /s/

                                        _____
                                        JAMES D. PETERSON
                                        District Judge